UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LETAP HOSPITALITY, L.L.C., AND<br>URVIL PATEL, INDIVIDUALLY AND<br>AS GUARANTOR OF LETAP<br>HOSPITALITY, L.L.C. | CIVIL ACTION<br><br>NO. 08-1355 |
| VERSUS | |
| DAYS INN WORLDWIDE, INC. | SECTION "C" (2) |

### ORDER AND REASONS[1]

     Before the Court is a Motion to Dismiss for Failure to State a Claim and Motion to Strike Immaterial and Impertinent Allegations, filed by the Defendant, Days Inns Worldwide ("DIW"),. (Rec. Doc. 19).  The Plaintiffs, Urvil Patel ("Patel") and Letap Hospitality, L.L.C. ("Letap") oppose the Motion to Dismiss and Motion to Strike.  In addition, Patel and Letap request the opportunity to file a more definite statement, to further define the distinction between the claims and damages they have asserted, pursuant to FED.R.CIV.P. 12(e).  The Court has reviewed the memoranda of counsel, the record and applicable law, and determined that DIW's Motion to Dismiss is GRANTED in part, and DENIED in part, DIW's Motion to Strike is DENIED, and Letap must provide a more definite statement as delineated in the Order.[2]

---

[1] Samantha Kennedy, a second year law student at Loyola University New Orleans, College of Law, assisted in the research and preparation of this Order.

[2] As discussed below, courts may *sua sponte* order plaintiffs to clarify a complaint pursuant to Rule 12(e).

**I. BACKGROUND**

On November 19, 2004, Patel, on behalf of Letap, entered into a franchise contract with DIW. In addition, Patel signed a separate agreement as guarantor for Letap. The franchise agreement allowed Letap to operate as a Days Inn hotel on Canal Street in New Orleans, Louisiana. (Rec. Doc. 1). Letap alleges that it bought the property in a "run-down" condition and had to bring the property up to DIW's standards in 2005. *Id*. at 5. On May 13, 2005, Letap sent DIW a letter contesting DIW's proposal to create a new franchise named "Days Hotel New Orleans" along I-10 between the New Orleans airport and Letap's property. Letap's letter explained the possible negative impact the new franchise would have on Letap's franchise. (Rec. Doc. 10-10; Exhibit P-3).

On August 29, 2005, Hurricane Katrina hit New Orleans and damaged the Letap property. Letap claims that its hotel sustained six feet of flood water and that less than 75% of the guest rooms were available. (Rec. Doc. 1). On September 8, 2005, pursuant to provision 11.3.1 of the License Agreement,[3] Letap sent DIW a letter stating that the property could not currently be inspected and would not be brought to DIW's standards within the 60 or 180 day period set forth in the contract. There is no evidence of communication between Letap and DIW for at least the next 60 days, which Letap now argues terminated the License Agreement pursuant to provision 11.3.1 of the Agreement. The Agreement reads: "[Y]ou may decide within 60 days after the Casualty, and if we do not hear from you, we will assume that you have decided to terminate this Agreement." (Rec. Doc. 1).

---

[3] 11.3.1: "You [Letap] will notify us [DIW] promptly after the Facility suffers a Casualty that prevents you from operating in the normal course of business, with less than 75% of guest rooms available…" (Rec. Doc. 1-4, 14).

2

After Hurricane Katrina, Letap began renovating and repairing the property. In April 2006, DIW inspected the hotel and Letap reopened the property as a DIW franchise. However, Letap subsequently failed DIW's inspections. Over the course of Letap's rebuilding efforts, the Reservation System[4] provided by DIW was periodically turned off, and Letap failed to pay various franchise fees.

Letap notes that DIW granted a 4% reduction in fees and "concessions" for the "Days Hotel New Orleans" in Metairie, where Letap alleges that storm damage was minimal. Though Letap allegedly requested the same considerations, no such concessions were afforded to Letap. Patel and Letap assert that the inconsistency in concessions stems from DIW's racial discrimination because Patel is of Indian descent. According to Patel, the owner of the "Days Hotel New Orleans" and the previous owner of Patel's property, are both white. Letap alleges that the prior owner failed eight inspections and was given concessions on various contractual obligations. On September 13, 2007, DIW contends it terminated the License Agreement with Letap (as opposed to November 2005, as Letap argues),[5] ending their contractual relationship.

On February 21, 2008, Letap and Patel filed suit against DIW. Upon a thorough review of the complaint, the Court has identified the following claims: 1) Malicious Acts; 2) Misrepresentation; 3) Violation of Louisiana Unfair Trade Practices Act; 4) Economic Duress; 5) Discrimination; 6) Detrimental Reliance; 7) False Advertising, Misnaming, Mislabeling,

---

[4] The Reservation System enables customers to reserve space at the hotel via the internet. (Rec. Doc. 1).

[5] Herein lies an unarticulated alternative argument by Letap. Letap argues both that the Agreement was terminated in November, 2005 and that DIW breached the existing contract with Letap through its various actions, *after* November 2005.

Misleading Labeling; 8) Breach of Contract; 9) Bad Faith; 10) Unjust Enrichment; and 11) Declaratory Judgment.[6]

On May 27, 2008, DIW filed the motions under review; specifically, DIW moves to dismiss (1) the Patel's claims, brought in his individual capacity and as a guarantor of Letap, and (2) Letap's claims against DIW, with the exception of the Breach of Contract claim and the request for Declaratory Judgment terminating the License Agreement.

## II. STANDARD OF REVIEW

Under the standard of review for a Rule 12(b)(6) motion, a court must take the well-pleaded factual allegation of a complaint as true. *In Re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). The plaintiff must plead sufficient facts to state a claim for relief

---

[6] DIW's Motion to Dismiss interprets the Plaintiffs' claims as: 1) Malicious Acts, 2) Misrepresentation, 3) Violation of the Louisiana Unfair Trade Practices Act, 4) Detrimental Reliance, 5) Economic Duress, 6) False Advertising, 7) Bad Faith, 8) Discrimination, 9) Breach of Contract, 10) Declaratory Judgment that the License Agreement terminated, pursuant to 11.3.1 of the Agreement, 11) Lack of Good Faith, 12) Negligence 13) Contract Reformation. (Rec. Doc. 19).

DIW identifies similar claims as the Court, but also found "Lack of Good Faith," (the inverse of "Bad Faith") and "Negligence" in the complaint. The Court does not find that Letap and Patel state a negligence claim. The complaint limits the use of "negligence" to one (1) adjective. The term is never referred to again, nor is it further developed. (Rec. Doc. 1-3, 9). DIW also addresses the Plaintiffs' request for "contract reformation" as a remedy. DIW argues that Plaintiff's request for contract reformation is an unsupported equitable remedy. New Jersey law requires that the plaintiff alleges either "mistake" or "fraud" as a claim to be eligible for such a remedy. *Alexander v. Cigna Corp.*, 991 F.Supp. 427, 442 (D.N.J. 1998); *Intertech Assoc., Inc. v. City of Paterson*, 255 N.J.Super. 52, 59-60 (1992). Letap brings neither, and thus, is ineligible for contract reformation. Nonetheless, a 12(b)(6) motion for "failure to state a claim upon which relief can be granted" applies to *claims*, not remedy, so the motion to dismiss "contract reformation" cannot be granted.

The Court will only analyze and dismiss claims that it believes that the Plaintiffs exerted in the complaint.

4

that is "plausible on its face;" the plaintiff's right to relief must be raised "above the speculative level" by the factual allegations. *Id.* Conclusory allegations, or legal conclusions serving as factual conclusions, will not prevent dismissal. *United States ex. Rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648, 654 (5th Cir. 2004). The Supreme Court recently ruled that a district court cannot dismiss a complaint under Rule 12(b)(6) unless it appears beyond a doubt that the plaintiff cannot prove a plausible set of facts in support of a claim that would entitle him to relief. *Bell Atlantic Corp. v. Twombley*, --- U.S. ---, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A court's ultimate conclusion that a case should be dismissed may rest "on any one of three separate basis: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. U.S.*, 74 F.3d 657, 659 (5th Cir. 1996) (citations omitted).

### III. LAW AND ANALYSIS

DIW asserts that the Plaintiffs' complaint, with the exception of the claims for breach of contract and declaratory judgment, "fail[s] to set forth facts sufficient to state a cause of action." (Rec. Doc. 19, p. 2). Because the Plaintiffs' complaint is a litany of grievances, it is difficult to discern the *legal* claims. To the Plaintiffs' misfortune, their complaint initially appears to consist of nothing more than allegations and conclusions.[7] As stated earlier, a complaint generally does not survive if solely based on conclusory allegations or factual conclusions.

---

[7] FED.R.CIV.P. 8(a) limits grievances set out in a complaint to a short simple document citing legal claims. Rule 8(a) requires that a pleading stating a claim for relief contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief.

*Twombley*, ---U.S.---, 127 S.Ct. 1955.  However, in some cases, a complaint using conclusory language can survive a motion to dismiss.  *See e.g., Garcia v. Hilton Hotels Intern.*, 97 F.Supp. 5, 8 (D.P.R. 1951) (holding that while in a technical sense, the language was conclusory, the allegation was apparent and thus should not be dismissed on that ground alone).

The Court begins by assessing DIW's Motion to Dismiss Patel as a party to the suit.  Second, the Court investigates DIW's Motion to Dismiss Letap's claims.  Finally, the Court analyzes DIW's 12(f) Motion to Strike.

### A.  Motion to Dismiss Patel as a Plaintiff

Patel brings claims against DIW for: Breach of Contract, Unfair Trade Practices, Bad Faith, Lack of Good Faith, Discrimination, Malicious Acts, Misrepresentation, False Advertising, and Detrimental Reliance.[8]  DIW argues that Patel, as a mere guarantor, is precluded from bringing any claims because he is not a party to the contract. Under New Jersey law,[9] a guarantor can recover damages if the claims are not barred under the "derivative injury rule."  *In re Kaplan*, 143 F.3d 807, 812 (3d Cir. 1998) (holding that the derivative injury rule does not bar injuries that were inflicted individually).  The derivative injury rule precludes guarantors or shareholders from asserting damages for harm that mirrors the injury experienced by the guarantor's or shareholder's company.  *Id*. at 812.

In light of the New Jersey law governing guarantor rights, Patel is barred as a plaintiff for any claim concerning the formation or breach of the contract because Letap asserts the same

---

[8] The Complaint states that the claims are brought by "Urvil *Kumar*" and argues that he has standing to sue.  The Court assumes that "Urvil Kumar" is "Urvil Patel," because "Kumar" is discussed nowhere else in the complaint.

[9] The License Agreement requires that New Jersey law govern the contract.  Provision 17.6.1 of the License Agreement states: "This Agreement will be governed by and construed under the laws of the State of New Jersey, except for its conflict of law principles."

claims, making Patel's claims duplicative in form, or duplicative in damages.  Therefore, Patel's claims for breach of contract, unfair trade practices, bad faith, lack of good faith, malicious acts, misrepresentations, false advertising and detrimental reliance are dismissed pursuant to the derivative injury rule.  Stated another way, Patel cannot simultaneously bring the above stated claims in his individual capacity and on behalf of Letap.

Of the many claims asserted by Patel, only the discrimination claim could be construed as personal.  Thus, the Court must determine whether the discrimination Patel allegedly experienced is barred by the derivative injury rule because it is incidental or derivative of the alleged injury that Letap experienced.  More broadly stated, the concern is whether a guarantor can sue for personal injury because the defendant discriminated against the guarantor's company due to the guarantor's racial identity.

The Fifth Circuit examined a similar issue in *Bellows v. Amoco Oil Co.*, 118 F.3d 268 (5th Cir. 1997).  In *Bellows*, the plaintiff-owner was a member of a racial minority who claimed, on behalf of himself and his business, discriminatory treatment under 42 U.S.C. § 1981.  The court held that the plaintiff-owner, a guarantor, could not bring an individual claim because the owner's claims were derivative of the company's claims.  *Id.* at 276-77 (stating "because Bellow suffered no violation of his contract rights or rights to contract which differs from the violations claimed by PICI, we conclude Bellow has no individual cause of action").  The plaintiff-owner's claim clearly eroded the preclusion of double recovery, and thus, was derivative of the plaintiff-company.  *Id.* at 277 n. 27.

Furthermore, Patel's standing to sue has not been established.  In *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), a shareholder and sole owner of his business sued the company with whom his business contracted for discrimination under §1981.  The plaintiff alleged that the

7

defendant breached their contract due to racial animus, causing the plaintiff's business to fail, forcing him file for bankruptcy, and suffer monetary and emotional injuries.  The Supreme Court held that the plaintiff could not state a §1981 claim unless he had, or would have rights under an existing or proposed contract that he wished to make or enforce.  *Id*. at 476.  The Court notes that the plaintiff in *Domino's Pizza* made and enforced contracts on behalf of his company as the company's agent, as did Patel.  Indeed, Patel safeguarded and enforced Letap's rights under the contract, but alleges no contract provision or promise made to him personally.  As a result, Patel is not considered a party to the contract under §1981.  Patel must be dismissed as a plaintiff pursuant to *Domino's Pizza* because of his status as an individual-guarantor in this law suit.

### B. Motion to Dismiss Letap's Claims[10]

The Court is largely unable to assess the viability of Letap's claims because the complaint is unclear.  When a complaint is challenged by a 12(b)(6) motion, a court may order a plaintiff to file a more definite statement when it is faced with the "cumbersome task of sifting through myriad claims, many of which may be foreclosed by various defenses." 2 *Moore's Federal Practice* §12.36[1] at 12-122.  The Eleventh Circuit held that a district court has an obligation to order re-pleading under FED.R.CIV.P. 12(e) *sua sponte* when a complaint fails to link the asserted facts with its cause of action when it incorporates "every antecedent allegation by reference into each subsequent claim." *Id*. (citing *Wagner v. Horizon Pharm. Corp*., 464 F.3d 1273, 1275 (11th Cir.1996)).  The Fifth Circuit also holds that a court can require a plaintiff to

---

[10] DIW's Motion to Dismiss lists the contested claims subject to the 12(b)(6) motion as belonging to "Letap and/or Patel" (Rec. Doc. 19).  DIW goes on to dispute Patel's claims and discusses only a few claims as Letap-specific.  The complaint does not clearly delineate which claims belong to whom and they seemingly are brought by both.  Because of this uncertainty, the Court assumes that DIW's arguments against Patel's claims also apply to Letap.  Thus, the Court will evaluate the 12(b)(6) motion for Letap's claims based on the arguments provided by DIW therein.

8

provide additional facts to establish a right to recovery. *Id*. (citing *Sutton v. U.S.*, 819 F.2d 1289, 1300 (5th Cir. 1987)).[11]  This Court has already engaged in the "cumbersome task of sifting through myriad claims."  Yet, the Court has not successfully interpreted Letap's convoluted complaint.  Pursuant to *Sutton*, the Court is compelled to order a more definite statement, pursuant to Rule 12(e), for the following claims: Detrimental Reliance, False Advertising, Misnaming, Mislabeling, Misleading Labeling, and Breach of Contract.  For clarity, the Court considers each of Letap's identifiable claims below.

     1.  Malicious Acts

Letap alleges that DIW "maliciously breached its contract."  The Court is unable to find a cause of action for a malicious breach of contract under New Jersey law.  To the extent that the Plaintiff has asserted "malicious breach" as a separate cause of action, the claim is dismissed for failure to state a claim.

     2.  Misrepresentation

Letap's "misrepresentation" claim is not supported by the facts alleged.  A misrepresentation claim under New Jersey law requires that a plaintiff show that the defendant made an incorrect statement, upon which a plaintiff relied.  *Alexander v. Cigna Corp.*, 991 F.Supp 427, 440 (D. N.J. 1998).  Letap has neither cited nor referred to any false statements made by DIW.  Letap has only alleged that the disparate enforcement of the franchise agreement negatively impacted Letap.  The Court has found no case law construing facts of disparate enforcement as a claim for misrepresentation.  The facts alleged by Letap do not satisfy the Rule 12(b)(6) standard because Letap has not alleged sufficient facts make its claim for relief

---

[11] The court, when faced with a barebones record and broadly worded complaint, found that it had Rule 12(e) available to require the plaintiff to provide a more definite statement.

9

plausible on its face.  *Twombley*, ---U.S.---, 127 S.Ct. 1955.  The misrepresentation claim is dismissed for failure to state a claim.

       3.  Violation of Louisiana Unfair Trade Practices Act

Letap argues that DIW is liable for unfair trade practices due to the competition it created when building and naming the "Days Hotel New Orleans."  (Rec. Doc. 1-3, 2).  Letap brings this claim under Louisiana Unfair Trade Practices Act, alleging DIW violated the Act.  Because the contract is governed by New Jersey law, a claim founded in violation of Louisiana law cannot be maintained.  The claim is dismissed for failure to state a claim.

       4.  Economic Duress

Letap claims relief through the doctrine of economic duress.  Under New Jersey law, there are two elements for economic duress: "1. The party alleging economic duress must show that he has been the victim of a wrongful or unlawful act or threat, and 2. Such act or threat must be one which deprives the victim of his unfettered will." *Continental Bank of Pennsylvania v. Barclay Riding Academy, Inc*., 459 A.2d 1163, 1175 (N.J. 1983).  Nowhere in the complaint are facts alleging a "wrongful or unlawful act or threat," or any type of coercion as a part of the contractual process.  Moreover, the complaint alleges no facts that Letap was deprived of its will to enter into the License Agreement.  The claim for Economic Duress is dismissed for failure to state a claim.[12]

       5. Discrimination

Letap, as the sole minority owned business among the three franchises discussed, has alleged that it was subject to the disparate enforcement or allocation of concessions from DIW.

---

[12] For organizational purposes, the four claims discussed above 1) Malicious Acts; 2) Misrepresentation; 3) Violation of Louisiana Unfair Trade Practices Act; and 4) Economic Duress are all dismissed for failure to state a claim.

Letap argues it was treated differently than the previous white-owned franchise and Letap's contemporary, the white owned franchise, "Days Hotel New Orleans."

Under New Jersey law, protected classes may not be discriminated against. The New Jersey Law Against Discrimination ("LAD") states:

> the legislature further declares its opposition to such practices of discrimination when directed against any person by reason of the race, creed, color, national origin . . . stockholders, . . . business associates . . . in order that the economic prosperity and general welfare . . . may be protected and ensured.

N.J.S.A. ¶2 10:5-3. The LAD guarantees the civil rights protections promised by the state, with the goal of eradicating discrimination. *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436 (2005). DIW correctly notes that a plaintiff claiming discrimination must show discriminatory intent or motivation. However, in *Zive*, the New Jersey Supreme Court recognized the difficulty of proving intent, acknowledging that rarely would there be a 'smoking gun.' 182 N.J. at 446-47. The court noted that "because of its remedial purpose, the LAD should be construed liberally to achieve its aims." *Id*. at 446 (citing *Franek v. Tomahawk Lake Resort*, 333 N.J.Super. 206, 217, 754 A.2d 1237, 1243 (App.Div. 2000)). To remedy the difficulty of finding the 'smoking gun' to prove intent, a plaintiff may make their case through circumstantial evidence, showing that discrimination *could* be the basis for the treatment. *Id*. at 447.

Letap alleges that the previous franchise owner, a white person, failed eight inspections, and thus, did not uphold the License Agreement; yet, he was treated more favorably and with greater exception. Patel also claims that the Metairie hotel, "Days Hotel New Orleans," suffered less damage from the hurricane, yet its franchise fees were reduced. Additionally, Letap avers that the Metairie hotel benefitted from DIW's specific marketing to the public and use of the Reservation System, while Letap was not given that opportunity.

11

The LAD is purposely broad, embracing numerous protected classes. *Franeck v. Tomahawk Lake Resort*, 333 N.J.Super. 206, 217 (2000); *Viscik v. Fowler Equip. Co.*, 173 N.J. 1, 13, (2002). However based on the LAD wording and cases which raise the law, it is unclear whether its protective scope includes businesses. Nonetheless, LAD is meant to be construed or analyzed consistently with federal anti-discrimination laws. *Turner v. Wong*, 363 N.J.Super. 186, 211 (2003). 42 U.S.C. § 1981 imputes a racial identity to companies, which may allow them to sue another company for discrimination. *Thinket Ink Info. Res., Inc. v. Sun Microsystems*, 368 F. 3d 1053 (9th Cir. 2004). Section 1981 embodies the sentiment of the LAD, however § 1981 aims are framed in contract. *Turner*, 363 N.J.Super. at 210; 42 U.S.C. § 1981.

More specifically § 1981's aim is to "remove the impediment of discrimination from minority citizens' ability to participate fully and equally in the market place," and thus its application is not limited to formal contracts and includes commercial transactions.[13] *Id*. In its amended form, §1981 provides protection against discriminatory conduct during and after the formation of contract. This change allows the statute to prevent discriminatory *enforcement* of contract and the impingement of the benefits, terms, privileges and conditions of a contractual relationship. *Id*. at 214. Letap argues that the denial of the benefit of the Reservation System and the enforcement of the franchise fees, neither of which were imposed on its predecessor and Metairie contemporary, constitute disparate treatment.

To survive a 12(b)(6) motion, a plaintiff must assert facts to make a *prima facie* case for discrimination plausible. There are several incarnations to the prerequisite elements of a

---

[13] Congress amended §1981 in 1991, reaffirming the importance of its application in a "broad variety of contexts." *Turner v. Wong*, 363 N.J.Super. 186, 210 (2003.

12

discrimination claim under §1981. In the context of a §1981 claim for commercial establishments, The *prima facie* case alleges the company:

> 1) is a member of a protected class;2) sought to make or enforce a contract for services ordinarily provided by the defendant; and 3) was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that a) plaintiff was deprived of the services while similarly situated persons outside the protected class were not and/or b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Id*. at 216 n. 7. Most analogous to this case, the elements for discrimination under § 1981 were discussed in *Elkhatib v. Dunken Donuts, Inc*., 493 F.3d 827 (7th Cir. 2007). In *Elkhatib*, a Muslim franchise owner sued Dunkin Donuts for discriminatory treatment; the court stated that the *prima facie* case was established by producing evidence that (1) the plaintiff belongs to a protected class; (2) the plaintiff met the franchisor's legitimate expectations with regard to the franchise agreement; (3) the plaintiff suffered an adverse action; and (4) similarly-situated non-protected individuals were treated more favorably. *Id.* at 830.

Letap alleges the following facts: (1) its owner and guarantor, Patel, is of Indian descent; (2) the Canal Street property was improved to meet DIW's standards in 2005; (3) it was deprived of advertising promotion, Reservation System access, and the benefit of reduced fees and concessions; and (4) similarly situated white owners of DIW franchises received the benefits denied to Letap. Given these allegations, Letap's assertion of discrimination cannot be dismissed by DIW's 12(b)(6) motion. Based on the face of the complaint, Letap has alleged a *prima facie* § 1981 case. Consequently, DIW's motion to dismiss is denied with respect to Letap's discrimination claim.

6.  Detrimental Reliance

Letap argues that it relied on DIW's promise to "produce reservation referrals and market the brand in its business area" and furthermore, it "relied on what defendant represented to offer a high amount of reservations." (Rec. Doc. 1, p. 10). DIW argues that such reliance is prohibited by clause 17.7.4 of the Agreement: "You (Letap) acknowledge that no salesperson has made any promise or provided any information to you about projected sales, revenues, income, profits or expense from the Facility . . ." (Rec. Doc. 19). Letap appears to assert that it relied on statements outside of the contract. Under New Jersey law, detrimental reliance, or "promissory estoppel,"[14] is an alternative equitable remedy theory to breach of contract. To prove detrimental reliance, Letap must 1) allege a clear and definite promise 2) which induced him into contract, 3) there was reasonable reliance on such promise, and 4) a detriment was suffered due to the reliance. *Rodichok v. Limitorque*, 1997 WL 392535, at *13 (D.N.J. June 13, 2006). A 12(b)(6) motion cannot dismiss a claim for lack of proof; however the facts alleged must indicate that the claim could be proved. The alleged "promise" to have a high amount of reservations is not explained sufficiently in the complaint to assess its nature. The Court orders a more definite statement, pursuant to Rule 12(e), regarding any promises that may have induced Letap to contract with DIW.

7.  False Advertising, Misnaming, Mislabeling, Misleading Labeling

Letap alleges that DIW falsely advertised the Metairie franchise, "Days Hotel New Orleans," as a New Orleans hotel. According to Letap, the Days Inn website and Reservation

---

[14] Upon a review of New Jersey caselaw, the Court finds that the elements for Detrimental Reliance, Promissory Estoppel and Equitable Estoppel are the same and the claims are used interchangeably in New Jersey to address the same type of alleged wrong. *See e.g.*, *Marzarella v. Ocean County Bd. of Chosen Freeholders*, 2008 WL 731753, at *5 n. 8 (N.J.Super. 2008).

System displayed the "Days Hotel New Orleans" and not the Days Inn located in New Orleans and owned by Letap.

The *prima facie* elements for false advertising under §43(a) of the Lanham Act, 15 U.S.C. §1125, are: 1) that the defendant made a misrepresentation; 2) that the misrepresentation actually deceived or tended to deceived the persons to whom it was directed; 3) that the misrepresentation was likely to influence purchasing decisions; 4) that the misrepresentation injured or was likely to injure the plaintiff; and 5) that the misrepresentation was made in commerce.  15 U.S.C. § 1125.  While Letap alleges facts that fall under some of these elements, the Court can find no case law or statute which indicates or supports that the name of a business constitutes "advertising," false or otherwise.

Letap also alleges that misnaming the "Days Hotel New Orleans" diverted business from Letap.  The Court cannot find a recognized cause of action for either "misnaming" or "mislabeling."  For a claim to survive a 12(b)(6) action, a *legal* problem and a matching cause of action must be provided to the Court.  *Twombley,* ---U.S.---, 127 S.Ct. at 1965.  To be viable, the claim must cite to a contract provision that prohibits DIW's actions or a law which prevents DIW's naming of the Metairie franchise "Days Hotel New Orleans."  Because there are facts alleged, but the relationship to the stated causes of action are unclear, the Court orders Letap to provide a more definite statement pursuant to Rule 12(e).

    8.  Breach of Contract

Letap alleges that DIW breached their contract by violating "[DIW's] own rules and policies." (Rec. Doc. 1, p. 6).  As discussed above, DIW's Motion to Dismiss is not directed at Letap's contract claims.  While the claim is not at risk for dismissal at this time, the Court orders

15

Letap to provide a more definite statement concerning the contractual provisions that it claims DIW breached pursuant to Rule 12(e).[15]

### 9. Bad Faith

Letap alleges that DIW "intentionally in bad faith. . . fail[ed] to follow obligations. . . for the hotel to be an economically viable entity." (Rec. Doc. 1-3, 10). DIW moves to dismiss this "bad faith" claim. The inverse of "bad faith" (the result) is "good faith" (the requirement). Under New Jersey law every contract imposes a duty of "good faith and fair dealing" as an implied term. *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993). Good faith requires that parties to a contract "refrain from doing anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 182 N.J. 210, 225 (2005). (internal citation omitted). DIW must have prevented Letap from receiving the intended benefit of the bargain to constitute acting in "bad faith." *Id*. Because this claim is inexorably tied to Letap's breach of contract claim, and DIW's 12(b)(6) motion specifically failed to challenge Letap's breach of contract claims, the Court declines to analyze the "Bad Faith/Good Faith" issue at this time.

### 10. Unjust Enrichment

Letap argues that DIW did not deliver on the contract, breached the franchise agreement, and obtained unjust enrichment. Under New Jersey law, "there are two basic elements of unjust enrichment claim." *D. R. Horton, Inc.-New Jersey v. Dynastar Development, LLC,* 2005 WL 1939778 at *18 (2005). Letap must show 1) that DIW received a benefit and 2) that DIW will be unjustly enriched if he is allowed to keep the benefit. *Id.* The alleged benefit received by DIW

---

[15] Again, for organizational purposes, the Court notes that the claims for 6) Detrimental Reliance; 7) False Advertising, Misnaming, Mislabeling, Misleading Labeling, and 8) Breach of Contract must be re-asserted in an amended complaint pursuant to Rule 12(e).

and whether DIW should be allowed to retain such benefit is inextricably linked to the validity and enforcement of the contract between the parties. Because a claim for unjust enrichment necessitates an evaluation of the breach of contract claim, which DIW does not currently challenge, the Court declines to analyze the unjust enrichment claim at this time.

     11. Declaratory Judgment

Letap requests a declaratory judgment to eliminate the franchise fees that accrued following the 60 days that there was no communication between the two parties, arguing that the license agreement terminated pursuant to 11.3.1 of the Agreement. The Court notes that a declaratory judgment can only be considered if it is sought to resolve the *entire* underlying case. *Calderon v. Ashmus*, 523 U.S. 740, 747-48 (1998). However, DIW does not contest Letap's request for Declaratory Judgment for Termination of License Agreement, and thus, 12(b)(6) consideration for this claim is not appropriate at this time.[16]

    **C. Motion to Strike - Rule 12(f)**

DIW moves this Court to strike from Letap's complaint the bottom portion of Paragraph 25, beginning with the "Defendant has a track record. . ." pursuant to FED.R.CIV.P. 12(f). (Rec. Doc. 19, p.19). Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). To prevail in a Motion to Strike, the movant must clearly show that the challenged matter "has no bearing on the subject matter of the litigation and that its inclusion will prejudice defendants." 2 *Moore's Federal Practice* §12.37[3] at 12-129.

---

[16] The final segment of claims, 9) Bad Faith; 10) Unjust Enrichment; and 11) Declaratory Judgment were not challenged by DIW's Motion to Dismiss.

Immaterial and impertinent matters must be information which is "neither responsive, nor relevant to the issue involved." *See* 2 *Moore's Federal Practice* §12.37[3] at 12-130.  DIW argues that the bottom portion of the paragraph does not build a claim or supply facts related to the dispute between Letap and DIW, but instead refers to a previous case, where DIW was party to a different contract and set of facts.  Although the challenged language is somewhat impertinent, the Court is not persuaded that the allegations are irrelevant to the proceedings.  Therefore, DIW's motion to strike is denied.

**IV. CONCLUSION**

The Court dismisses for failure to state a claim, pursuant to Rule 12(b)(6), Patel's claims in his individual or guarantor capacity, and Letap's claims for 1) Malicious Acts; 2) Misrepresentation; 3) Violation of Louisiana Unfair Trade Practices Act; and 4) Economic Duress.  Letap's fifth claim, discrimination, survives the 12(b)(6) motion.  In addition, the Court directs Letap to provide a more definite statement, pursuant to Rule 12(e), regarding the claims for 6) Detrimental Reliance; 7) False Advertising, Misnaming, Mislabeling, Misleading Labeling, and 8) Breach of Contract.  Letap's claims for 9) Bad Faith; 10) Unjust Enrichment; and 11) Declaratory Judgment were not challenged by DIW.

Accordingly,

IT IS ORDERED that the Defendant's Motion to Dismiss for Failure to State a Claim is GRANTED in part, and DENIED in part (Rec. Doc. 19).

IT IS FURTHER ORDERED that the Defendant's Motion to Strike is DENIED (Rec. Doc. 19).

IT IS FURTHER ORDERED that the Plaintiffs provide a more definite statement as delineated in the Order.

New Orleans, Louisiana, this 7th day of August, 2008.

                                        HELEN G. BERRIGAN
                                        UNITED STATES DISTRICT JUDGE